**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-04036-01-CR-C-NKL |
| | ) | |
| **CITY OF LAKE OZARK**, | ) | |
| | ) | |
| Defendant. | ) | |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties**.  The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by John F. Wood, United States Attorney, and Lawrence E. Miller, Assistant United States Attorney, and the defendant, City of Lake Ozark ("the defendant"), represented by J.R. Hobbs.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority, or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea**. The defendant agrees to and hereby does waive indictment and plead guilty to an information, charging it with a violation of 33 U.S.C. §§ 1311(a) and 1319(c)(2)(A) and 18 U.S.C. § 2, that is, the illegal discharge of pollutants into the Lake of the Ozarks in violation of its NPDES permit. By entering into this plea agreement, the defendant admits that it knowingly committed this offense, and is, in fact, guilty of this offense.

3. **Factual Basis for Guilty Plea**. The parties agree that the facts constituting the offense to which the defendant is pleading guilty are as follows:

> The Clean Water Act ("CWA") is the primary Federal statute addressing water pollution. Its stated purpose is the "restoration and maintenance of the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1311. The CWA and its implementing regulations prohibit the discharge of any pollutant from a point source into waters of the United States, except in compliance with a permit issued pursuant to the CWA under the National Pollution Discharge Elimination System ("NPDES") by the United States Environmental Protection Agency or an authorized state. 33 U.S.C. §§ 1311(a) and 1342.
>
> The discharge of wastewater from a wastewater treatment facility, to include lift stations, is a discharge of a pollutant from a point source as defined by the CWA. 33 U.S.C. §§ 1362(6) and (14). A wastewater treatment facility includes "any devices and systems used in the storage, treatment, recycling and reclamation of municipal waste" to include "intercepting sewers, outfall sewers, sewage collection systems, pumping, power and other equipment, and their appurtenances; extensions, improvements, remodeling, additions and alterations thereof." 33 U.S.C. § 1292(2)(A). A river or lake, or a tributary to a river or lake, in the State of Missouri is a water of the United States within the meaning of the

2

CWA. 33 U.S.C. § 1362(7). An NPDES permit contains specific monitoring requirements and limitations on the type and amount of pollutants that can be discharged from a facility. 33 U.S.C. § 1362(6).

Through the Missouri Department of Natural Resources ("DNR"), the State of Missouri is authorized and delegated authority to administer the CWA permit program in the State of Missouri. 33 U.S.C. § 1316. In the State of Missouri, the discharge of wastewater from a wastewater treatment facility is subject to the terms and conditions of an NPDES permit issued to the facility by DNR. 33 U.S.C. § 1318, 40 C.F.R. § 122.21(1)(4). Failure to notify DNR of bypass events is a violation of the standard conditions of a Missouri State Operating Permit.

From approximately November 1991 to November 9, 2007, Richard L. Sturgeon was the public works director for the City of Lake Ozark, Missouri, and was responsible for overseeing the City Waste Water Treatment Facility ("WWTF") and reporting sewage bypasses from the WWTF. The City of Lake Ozark ("the City") is located in Miller and Camden Counties, Missouri, and co-owns and operates the Lake of the Ozarks Regional WWTF with the City of Osage Beach, Missouri. Both the City and Osage Beach maintain their own separate sewage collection systems.

The City has a National Pollution Discharge Elimination System ("NPDES") permit issued by the State of Missouri, which requires that the City report bypasses and overflows from its sewage collection system. On September 11, 2007, DNR staff observed that Lift Station Number 700 off Highway HH in Camden County, Missouri, was experiencing a bypass. DNR staff noted that the sewage caused a dark plume of water in the Lake of the Ozarks. DNR notified the City of the bypass, and the City responded and stopped the flow, but conducted no clean up and provided no written notification of the bypass. A sample analysis of water collected from the Lake of the Ozarks showed extremely elevated levels for ammonia nitrogen and fecal coliform exceeding the criteria for whole body contact recreation. On September 13, 2007, DNR staff visited the site, and no clean up had been started. DNR contacted Rick Sturgeon, and requested a clean up of the area. The bypass was never reported to DNR as required by the City's permit.

Historically, the City has a history of overflows or bypass events from the WWTF lift stations into the Lake of the Ozarks.

Specifically, the evidence is summarized as follows:

April 4, 2002

Consent Agreement between the State of Missouri and the City, wherein the City admitted to discharging raw sewage from the Holiday Inn manhole into Lake of the Ozarks on October 12, 2000, November 28, 2000, and December 9, 2000, and agreed to pay a $5,000 fine.

In addition to hundreds of bypasses shown on police reports, daily logs, and citizen complaint forms, the following events are noted for the amounts discharged:

June 1, 2004
Beachcomber Lift Station

A City employee recalled the malfunction of a lift station in summer 2004. He witnessed sewage discharge directly into the Lake of the Ozarks a few different times from the Beachcomber lift station.

A June 1, 1004, police report log reflected: "... at city hall called and wanted me to page out the sewer department to Beachcomber Resort, to the place that they have been working on for a while now, there is raw sewage running into the lake."

March 7, 2005

DNR issued a Notice of Violation to the City, wherein it was noted: "You must report any significant amount of bypassing from wastewater treatment systems or any bypass that reaches waters of the state or a conduit (ditch, sinkhole, etc.) to waters of the state, within twenty-four (24) hours to the department's Southwest Regional Office, and within five (5) days in writing to the department Springfield Office."

April 5, 2006
Port Elsewhere Lift Station

EPA S/A Bill Absher observed discharge at the Port Elsewhere lift station. Although it was not discharging

4

into the Lake of the Ozarks at the time, he could see the path where it had discharged earlier.

In his interview of April 21, 2006, Rick Sturgeon stated they were having trouble with the Port Elsewhere lift station, and that it was leaking from out of the tank at ground level. He thought this had been occurring for at least a month or so. He confirmed that this lift station was approximately 100 feet from the Lake of the Ozarks. He stated that he was aware of at least three previous overflows (discharges of untreated sewage) from this lift station, the most recent occurring in the prior week. He stated that, when an overflow occurred, the untreated sewage discharged directly into the Lake of the Ozarks.

On April 21, 2006, DNR issued a Notice of Violation to Mayor Sale, noting the discharge of April 5, 2006, and asking for a written final investigation report, including the reason for the bypass and measures taken. The Notice of Violation re-stated, "You have also been reminded from previous correspondence to contact the department within twenty-four hours of a significant bypass event by telephone, and within five (5) days in writing. It does not appear that such contact was made with the agency. Please provide a written explanation on why the required notifications were not made."

September 11, 2006
HH Lift Station

The City reported estimated spillage of 10,000-15,000 gallons.

Sample analysis showed spcific conductivity at 1600 umhos/cm; ph at 7.10 and dissolved oxygen at 48 mg/l.

When DNR arrived, the City had made no attempt to clean up the spill.

City employees all confirmed that a second discharge occurred within weeks of the first and was not reported.

May 2007
Arrowhead Lift Station

In an interview of July 6, 2007, a former employee stated that, approximately 6 weeks earlier he had responded to the Arrowhead Beach Roadway lift station every day for a

5

week because it was overflowing with raw sewage. The overflows were causing the alarm to sound. The former employee could see where the sewer overflowed the lift station and discharged into the Lake of the Ozarks.

City employees confirmed that they responded to citizen complaints of ongoing discharges and sewage into the Lake of the Ozarks at the Arrowhead lift station during May 2007.

<u>September 11, 2007</u>
HH Lift Station

The computerized lift station maintenance log indicates that the pumps at the HH lift station were down during August and September 2007.

On September 11, 2007, DNR found discharge at the HH lift station, notified the City, and requested it repair and clean the area.

Sample analysis shows elevated levels for amonia nitrogen and fecal coliform exceeding the creteria for whole body contact recreation; specifically amonia at 36.6 mg/l, fecal coliform in excess of 600,000 cfu/100ml, ph at 7.46, and dissolved oxygen at .92 mg/l.

On September 13, 2007, a site visit by DNR showed no clean up had been started. Troy Potteiger with DNR contacted Rick Sturgeon directly, and requested a clean up of the area.

The City never reported the discharge noted by DNR on September 11, 2007.

    **4. Use of Factual Admissions**. The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining its guilt and appropriate fine to be determined by the Court. The defendant acknowledges, understands and agrees that the other uncharged related criminal activity, may

6

be considered as "relevant conduct" in calculating the appropriate fine.

   5. **Statutory Penalties**.  The defendant understands that, upon its plea of guilty to the information, charging it with the illegal discharge of pollutants, the maximum penalty the Court may impose is a fine of not less than $5,000 per day, and not more than $50,000 per day, and not more than five (5) years of probation, and a $400 mandatory special assessment which must be paid in full at the time of sentencing.  If the Court imposes probation, the defendant understands that the Court must impose a term of at least one (1) year.  The Government and the defendant agree that $50,000 is an appropriate fine to be assessed against the defendant in this case.  The Government agrees that if a term of probation is ordered the defendant may pay the $50,000 fine in annual equal installments over the period of probation.  If the defendant pays the entire $50,000 fine at sentencing, the Government has no opposition to the Court not placing the defendant on probation.  The defendant further understands that this offense is a Class E felony.

   6.   **Sentencing Procedures**.   The defendant acknowledges, understands and agrees to the following:

>   a.  in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature.  The defendant understands that the United States Sentencing Guidelines relating to the sentencing of organizations does not apply to the

7

imposition of fines for environmental crimes. See U.S.S.G. § 8C2.1 (Commentary-Background);

    b. the Court may impose a term of probation of up to five (5) years; that the Court must impose a period of probation of at least one (1) year if probation is imposed; a fine of not less than $5,000 per day and not more than $50,000 per day. The Court may also impose restitution and costs of prosection;

    c. the Court is not bound by any recommendation regarding the fine to be imposed; and

    d. the defendant may not withdraw its guilty plea solely because of the nature of the sentence imposed by the Court.

**7. Government's Agreements**. Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to the illegal discharge of pollutants for which it has venue and which arose out of the defendant's conduct described above. The defendant understands and agrees that, through this plea agreement, the United States Attorney's Office for the Western District of Missouri is <u>not</u> agreeing not to bring any charges against any current or former employees of the defendant, City of Lake Ozark.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of

8

violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives its right to challenge the initiation of the dismissed or additional charges against it if it breaches this agreement. The defendant expressly waives its right to assert a statute of limitations defense if the dismissed or additional charges are initiated against it following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against it following its breach of this plea agreement, it will not be allowed to withdraw its guilty plea.

The defendant agrees to upgrade and maintain its Wastewater Treatment Facility (WWTF) in compliance with the NPDES permit issued by the State of Missouri. The defendant further agrees to report any and all bypasses from its WWTF, to include bypasses from all lift stations, as required by the State of Missouri.

**8.  Preparation of Presentence Report**.  The defendant understands that the United States will provide to the Court and

9

the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of its criminal activities. The defendant understands that these disclosures are not limited to the count to which it has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and may correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9. Withdrawal of Plea**. Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw its plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts

10

its plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, it will not be permitted to withdraw its plea of guilty.

**10. Agreed Guidelines Applications**. With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature;

   b. The applicable Guidelines section for the offense of conviction is Chapter Eight of the Sentencing Guidelines, [parts A, B, C, D, and E,] regarding restitution, remedial orders, community service, fines, probation, and special assessment. The defendant understands that the United States Sentencing Guidelines relating to the sentencing of organizations does not apply to the imposition of fines for environmental crimes. See U.S.S.G. § 8C2.1 (Commentary-Background). The defendant understands that the Probation Office and the Court will determine the applicability;

   c. The defendant has admitted its guilt and clearly accepted responsibility for its actions;

   d. The amount of fine as agreed upon by the parties is not binding upon the Court or the United States Probation Office, and the Court may impose any fine authorized by law that is not "unreasonable";

   e. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence under the United States Sentencing Guidelines, (including the facts that support any specific offense characteristic or other enhancement or adjustment). The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to

11

have those facts alleged in the information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay.

**11. Effect of Non-Agreement on Guidelines Applications**. The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing**. The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13. Government's Reservation of Rights**. The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

12

b. comment on the evidence supporting the charge in
the information;

    c. oppose any arguments and requests for relief the
defendant might advance on an appeal from the sentence
imposed; and

    d. oppose any post-conviction motion for reduction
of sentence, or other relief.

    **14.** **Waiver of Constitutional Rights**.  The defendant, by pleading guilty, acknowledges that it has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in
a plea of not guilty;

    b.  the right to be presumed innocent until its
guilt has been established beyond a reasonable doubt at
trial;

    c.  the right to a jury trial, and at that trial,
the right to the effective assistance of counsel;

    d.  the right to confront and cross-examine the
witnesses who testify against it;

    e.  the right to compel or subpoena witnesses to
appear on its behalf; and

    f.  the right to remain silent at trial, in which
case its silence may not be used against it.

The defendant understands that, by pleading guilty, it waives or gives up those rights and that there will be no trial.  The defendant further understands that, if it pleads guilty, the Court may ask it questions about the offense to which it pleaded guilty, and if the defendant answers those questions under oath and in the

13

presence of counsel, its answers may later be used against it in a prosecution for perjury or making a false statement. The defendant also understands that it has pleaded guilty to a felony offense.

15. **Waiver of Appellate and Post-Conviction Rights**.

    a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, it waives its right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement; and

    b. The defendant expressly waives its right to appeal its sentence, directly or collaterally, on any ground except a sentence imposed in excess of the statutory maximum or an illegal sentence, that is, sentencing error more serious than a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal its sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Waiver of FOIA Request**. The defendant waives all of its rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

17. **Waiver of Claim for Attorney's Fees**. The defendant waives all of its claims under the Hyde Amendment, 18 U.S.C.

14

§ 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**18. Defendant's Agreement to Destruction of Biological Evidence**. In accordance with 18 U.S.C. § 3600A(c)(2), the defendant knowingly and voluntarily waives its right to request DNA testing of any biological evidence which may have been obtained or seized by law enforcement in its case. The defendant agrees that all biological evidence which may have been obtained or seized may be destroyed by law enforcement authorities.

**19. Defendant's Breach of Plea Agreement**. If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw its plea of guilty.

The defendant also understands and agrees that, in the event it violates this plea agreement, all statements made by it to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by it before a grand jury or any

15

tribunal, or any leads from such statements or testimony, shall be admissible against it in any and all criminal proceedings. The defendant waives any rights that it might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by it subsequent to this plea agreement.

  **20. Defendant's Representations**. The defendant acknowledges that it has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that it is satisfied with the assistance of counsel, and that counsel has fully advised it of its rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, its attorney, or any other party to induce it to enter its plea of guilty.

  **21. No Undisclosed Terms**. The United States and the defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written

16

supplemental agreement, do not constitute any part of the parties' agreement and will not be enforceable against either party.

   22.  **Standard of Interpretation**.  The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings.  The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

                              **John F. Wood**
                              United States Attorney

                         By   **/s/**

Dated   08/25/2008            **Lawrence E. Miller**
                              Assistant United States Attorney
                              Missouri Bar No. 39531


     The City has consulted with its attorney and fully understands all of its rights with respect to the offense charged in the information.  Further, the City has consulted with its attorney and fully understands its rights with respect to the provisions of the Sentencing Guidelines.  The City has read this plea agreement and carefully reviewed every part of it with its attorney.  The City understands this plea agreement, and voluntarily agrees to it.



Dated   08/25/2008                   /s/
                              **Johnnie Franzeskas, in his
                              representative capacity as
                              Mayor for Defendant,
                              City of Lake Ozark**

17

I am defendant the City of Lake Ozark's attorney. I have fully explained to the City its rights with respect to the offense charged in the information. Further, I have reviewed with the City the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with the City. To my knowledge, the City of Lake Ozark's decision to enter into this plea agreement is an informed and voluntary one.


Dated   08/25/2008          /s/
                                         **J.R. Hobbs**
                                         Attorney for Defendant